**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
|     **DEBORAH R. MALLOY,** | : | |
| | : | |
|     Debtor. | : | Bky. No. 14-17727 ELF |
| | : | |
| **DEBORAH R. MALLOY,** | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | Adv. No. 16-249 |
| **J&V DEVELOPERS, INC.,** | : | |
| | : | |
|     Defendant. | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

In this adversary proceeding, Debtor Deborah Malloy ("the Debtor") asserts that Defendant J&V Developers Inc. ("J&V") violated the automatic stay, 11 U.S.C. §362(a).  The Debtor seeks a determination of contempt and damages under 11 U.S.C. §362(k)(1).

J&V holds a claim against the Debtor that was determined to be nondischargeable pursuant to 11 U.S.C. §523(a)(6) prior to the commencement of this adversary proceeding.  See In re Malloy, 535 B.R. 81 (Bankr. E.D. Pa. 2015) (hereafter "Malloy I").  The Debtor asserts that, during the pendency of this chapter 7 case, before the entry of her chapter 7 discharge and while the automatic stay was in effect, J&V engaged in a series of escalating acts to try to collect that nondischargeable debt.

In the trial of this matter, the Debtor was unable to prove that J&V made any effort to collect the nondischargeable debt.  Therefore, I will enter judgment in favor of J&V and against the Debtor.

## II. PROCEDURAL HISTORY

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on September 25, 2014. Initially, the case was designated as a no-asset case. On December 1, 2014, the chapter 7 trustee filed a notice redesignating the case as an asset case and requesting that the Clerk set a deadline for the filing of claims. (Bky. No. 14-17727, Doc. # 58). The Trustee was unable to raise an estate and, on January 15, 2016, filed a no-asset report.

Meanwhile, due to the pendency of two (2) appeals filed by the Debtor, the bankruptcy remained open.[1] For unknown reasons (probably just judicial/clerical oversight), the Debtor's chapter 7 discharge was not entered until December 29, 2016, (Bky. No. 14-17727, Doc. # 164),[2] which left the automatic stay, 11 U.S.C. §362(a), in effect until then.

On August 1, 2016, the Debtor filed the complaint that commenced this adversary proceeding. Initially, the complaint was based on events that occurred in July 2016, although a later event that occurred in October 2016 was incorporated into the litigation.

The Complaint was filed on the Debtor's behalf by her husband, Edward C. Malloy ("Mr. Malloy"). By Order dated September 7, 2016, Mr. Malloy was suspended from the practice of law in the U.S. District Court for the Eastern District of Pennsylvania for a period of five (5)

---

[1] The Debtor appealed this court's nondischargeability determination in Malloy I. The district court affirmed the bankruptcy court determination. See In re Malloy, 2016 WL 2755593 (E.D. Pa. May 11, 2016). Also, the Debtor appealed an order sustaining the chapter 7 trustee's objection to a claimed exemption. That order, too, was affirmed recently by the district court. See In re Malloy, 2017 WL 3413004 (E.D. Pa. Aug. 9, 2017).

[2] Neither the ongoing §523(a) nondischargeability litigation nor the exemption litigation should have delayed the entry of the chapter 7 discharge. See Fed. R. Bankr. P. 4004(c)(1).

years. (Matter of Malloy, No. 16-mc-0147 (E.D. Pa.) (Doc. # 3)). Mr. Malloy withdrew his appearance in this adversary proceeding in the bankruptcy court on September 16, 2016. (Adv. No. 16-249, Doc. # 7).

Trial of this adversary proceeding was held and concluded on June 19, 2017. The Debtor proceeded pro se at trial and thereafter. The parties submitted proposed findings of fact and conclusions of law, the last of which was filed on July 17, 2017.

### III. FINDINGS OF FACT

1. On July 13, 2013, prior to the commencement of this chapter 7 bankruptcy case, J&V obtained a state court judgment for attorney's fees and costs in the amount of $63,486.05 ("the Fee Award") against the Debtor and Mr. Malloy, in connection with a breach of contract dispute that arose in a real estate transaction.

2. The attorneys who represented J&V in the underlying state court litigation resulting in the Fee Award were Paul Toner and Brian LeGrow.

3. As a separate consequence of the Fee Award, Mr. Malloy, who served as the Debtor's counsel in the state court litigation, faced disciplinary proceedings and subsequently was suspended from the practice of law.[3]

4. On September 25, 2014, the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code in this court.

---

[3] Mr. Malloy also was counsel of record in the Debtor's "main" bankruptcy case and filed the complaint on behalf of the Debtor that initiated this adversary proceeding. Shortly after filing the adversary complaint, he was suspended from practice in the federal courts in this district.

5.  On December 19, 2014, J&V initiated an adversary proceeding by filing a complaint seeking a determination that the Fee Award is nondischargeable under 11 U.S.C. §523(a)(6).

6.  On August 10, 2015, this court determined that the Fee Award was a debt for willful and malicious injury that is nondischargeable under 11 U.S.C. §523(a)(6).  Malloy I.

*   *   *   *   *   *

7.  By Order dated June 30, 2016, the Pennsylvania Supreme Court suspended Mr. Malloy from the practice of law in the Commonwealth of Pennsylvania for a five (5) year period.  (See Matter of Malloy, No. 16-mc-0147 (E.D. Pa.) (Doc. # 1).

8.  On July 28, 2016, the Debtor's employer (a company called "Sensaphone") received an e-mail from a sender identified as "Ryan Paul" ("the Employer Email").  (Ex. P-2).

9.  The subject line of the Employer Email contained the words "Contact Sales Request," but the content had nothing to do with a sales request.  Instead, the e-mail described, in some detail, Mr. Malloy's five (5) year suspension from legal practice "for numerous violations of the Rules of Professional Conduct" committed in connection with a "real estate transaction gone bad," that resulted in a lawsuit against the Debtor, in which Mr. Malloy filed "frivolous motions."

10. The Employer Email further stated that after a five-day bench trial, the trial judge concluded that Mr. Malloy "was not familiar with litigation practice, was unprepared for trial, and used tactics to obstruct or delay the proceeding."

\*   \*   \*   \*   \*   \*

11. A few days after the Debtor's employer received the Employer Email, the Debtor and Mr. Malloy received a letter in an envelope postmarked July 30, 2016 with no return address ("the July 30th Letter"). (Ex. P-3).

12. The envelope containing the July 30th Letter was addressed to "Ed 'Crazy Man' Malloy, Esq.," with the "Esq." after his name crossed out with an "X."

13. The July 30th Letter stated the following:

> YOU SOUND LIKE ONE CRAZY F\*\*K.
>
> GOOGLE TERRANCE HEALY. BOTH OF YOU IMBECILES ARE BIRDS OF A FEATHER.
>
> YOUR POOR WIFE.
>
> YOU CRAZY CRAZY F\*\*K.[4]

\*   \*   \*   \*   \*   \*

14. In late October 2016, the Debtor and Mr. Malloy received an envelope postmarked October 27, 2016, with no return address, addressed by hand to "The Malloys" ("the October 27th Letter"). (Ex. P-13).[5]

---

[4] I have toned down the obscenity in the July 30th Letter.

[5] The October 27th Letter was received after the commencement of this adversary proceeding.

15. Inside the envelope was a document that appeared to be a print-out of the first page of an on-line article from The Legal Intelligencer titled, "When Legal Malpractice Becomes a Disciplinary Matter."

16. On the document, just above the title to the article, was a handwritten note stating "Good article you will enjoy."

*   *   *   *   *   *

17. The evidence produced at trial did not establish that any of the communications were intended to pressure the Debtor into paying her nondischargeable debt to J&V.

18. The evidence produced at trial did not establish that J&V or any of its agents or representatives authored or caused any of the communications to be sent.

## IV.  DISCUSSION

### A.  Legal Standard - Damages for Violation of the Automatic Stay

The automatic stay "is one of the fundamental debtor protections supplied by the Bankruptcy Code." <u>In re University Medical Center</u>, 973 F.2d 1065, 1074 (3d Cir. 1992). It provides the bankruptcy process with an opportunity "to resolve competing economic interests in an orderly and effective way," as the stay was designed to: (1) effectively stop all creditor collection efforts; (2) stop all harassment of a debtor seeking relief; and (3) maintain the status quo between the debtor and creditors. <u>Taylor v. Slick</u>, 178 F.3d 698, 702 (3d Cir. 1999) (citation omitted); <u>In re Mu'min</u>, 374 B.R. 149, 154 (Bankr. E.D. Pa. 2007).

While the Debtor did not specify in her complaint which subsection of §362(a) was

allegedly violated, the actions she complains of arguably fall within the catchall of §362(a)(6), which provides that the stay shall prevent "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. §362(a)(6).

Once a debtor establishes a stay violation has occurred, in order to recover damages under 11 U.S.C. §362(k), the debtor must also prove that the violation was "willful." E.g., In re Dean, 2012 WL 4634291, * 5 (Bankr. E.D. Pa. Oct. 1, 2012); In re Nixon, 419 B.R. 281, 291 (Bankr. E.D. Pa. 2009).[6]

"Willfulness," as recently explained by the Third Circuit, is

> when a creditor violates the stay with the knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional .... [A] creditor's 'good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness....

In re Lansaw, 853 F.3d 657, 664 n.4 (3d Cir. 2017).[7]

---

[6] 11 U.S.C. §362(k)(1) provides, in pertinent part:

> an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

[7] In light of my finding that the Debtor has not proven that J&V committed any violation of the automatic stay, it is not necessary to parse the subtle differences between the §362(k) remedy and the contempt remedy. I recently had occasion to discuss the elements necessary for a finding of contempt of the automatic stay and the available remedies, in In re Odom, 2017 WL 3475478, at *4-5 (Bankr. E.D. Pa. Aug. 10, 2017).

**B. The Debtor Did Not Prove the Necessary Elements of Her Claim**

**1.**

The Debtor's theory of liability is that the communications that she and Mr. Malloy received, all three (3) of which can only be characterized as harassing - but none of which made an express request for payment of the nondischargeable debt she owes to J&V - were nonetheless designed to pressure her into paying the debt. Necessarily part of the Debtor's theory is that the anonymous communications were sent by J&V, acting through its agents.

As a matter of law, the Debtor's legal theory is supportable. Numerous cases emphasize that the protections of 11 U.S.C. §362(a)(6) are very broad in scope. See Rosas v. Monroe Cty. Tax Claim Bureau, 323 B.R. 893, 898 (Bankr. M.D. Pa. 2004); In re Grau, 172 B.R. 686, 690 (Bankr. S.D. Fla. 1994) (citing Morgan Guaranty Trust Co. v. American Sav. & Loan Assoc., 804 F.2d 1487, 1491 (9th Cir. 1986)). Also, it is well established that §362(a)(6) prohibits any action that amounts to pressure on a debtor to pay a debt subject to the automatic stay, even if there is no direct demand for payment. See In re Sechuan City, Inc., 96 B.R. 37, 41-42 (Bankr. E.D. Pa. 1989); see also In re Sullivan, 367 B.R. 54, 62 (Bankr. N.D.N.Y. 2007); In re Draper, 237 B.R. 502, 505 (Bankr. M.D. Fla. 1999); Divane v. A & C Elec. Co., 193 B.R. 856, 859 (N.D. Ill. 1996).

The Debtor's claim fails, however, at the factual level. As discussed below, she did not succeed in proving either that the communications were designed to compel her to pay the nondischargeable debt to J&V or that any of the communications were sent by agents or representatives of J&V.

**2.**

Initially, the Debtor suggests that the Employer Email was designed to compel repayment of the J&V debt because she never intended for her employer to learn of her bankruptcy. In the Debtor's view, the communication was intended to put pressure on her because J&V "knew what buttons to push." (Debtor's Post-Trial Br. at 2).

The Debtor attempts to link authorship of the Employer Email to J&V in three (3) ways.

First, because this electronic communication came on the heels of the Debtor serving a state court subpoena on Brian LeGrow in the litigation involving the Debtor and J&V's attorneys that continues outside the bankruptcy court,[8] the Debtor contends that the Employer Email commenced what she described as an escalating pattern of harassment designed to compel her to pay the J&V debt.[9]

Second, the Debtor infers that the name "Ryan Paul" is a "nom de plume" that blends, with some variation, the names of J&V's attorneys: Brian LeGrow and Paul Toner.

Finally, the Debtor asserts that the Employer Email must have come from J&V (or its attorneys) because there is only "a very small universe of people" who knew about these issues, i.e., the Fee Award, the bankruptcy action, where she works and lives. Id. at 3.

---

[8] (See Ex. P-1) (letter from Brian C. Legrow to Debtor sent in connection with Malloy v. Kovalcheck, et al., No. 2015-010171 (C.P. Dela.)).

[9] The antagonism between the parties arising from a failed 2007 real estate transaction is prodigious. Some of the flavor can be gleaned from Malloy I. In addition, in numerous filings in this court, the Debtor accused J&V's attorneys of professional misconduct. (Adv. No. 16-249, Doc. #'s 32, 47, 63, 86).

As factfinder, I am unpersuaded by the Debtor's arguments.

Initially, I do not draw the inference that the Employer Email, which refers only to a professional disciplinary proceeding, was designed to pressure the Debtor into paying her debt to J&V. Even if J&V sent the e-mail – which the Debtor did not prove, see discussion immediately following – there is an equally plausible motivation for J&V to have sent the communication that has nothing to do with debt collection. Considering the enmity among the parties, see n.9, supra, the motivation could just as easily have been, without any pecuniary intent, simply to embarrass, harass and "pay back" the Debtor for what J&V probably considers to be her ongoing, outrageous conduct since 2007. If so, the sending of the communication might give rise to a tort claim under non-bankruptcy law, but it would not be a violation of the automatic stay.

In any event, and accepting arguendo that advising the Debtor's employer about her husband's suspension from the practice of law is a tactic to pressure the Debtor to repay her debt to J&V, the evidence does not establish that it is more likely than not that J&V was responsible for the Employer Email.

The connection the Debtor attempts to make between the email and J&V is strained at best. The Debtor suggests that the email was sent after a state court skirmish; that it was a response to the service of a subpoena. But service of a subpoena is hardly a seismic event in litigation. Based on this fact alone, it is not more likely than not that J&V would respond by instructing its attorneys to anonymously contact the Debtor's employer, or that J&V's attorneys, on their own, would retaliate, with the anonymous email. The Debtor's argument is a product of the logical fallacy, post hoc ergo propter hoc.

The Debtor's "blended names" theory is circumstantial and speculative at best. It is not a sufficient evidentiary foundation for the conclusion that J&V's representative authored the email.

As for the "small universe of people" notion, that also is far too speculative a basis for the factual inference that the Debtor asks me to draw. Indeed, given the number of reported decisions arising from the initial dispute between the Debtor and J&V, described in Malloy I, and the public notice of Mr. Malloy's suspension from legal practice, I have no basis for even finding that knowledge of Mr. Malloy's professional troubles was limited to a "small universe." Indeed, it is at least an equally plausible inference that the type of practices that caused Mr. Malloy to be suspended occurred in other cases that he has handled, creating a "larger universe" of enraged adversaries with as much reason as J&V to gloat over his suspension.

**3.**

Next, the July 30th Letter does not provide adequate evidentiary support for the Debtor's theory that J&V is used abusive tactics to pressure her to repay her debt.

Unquestionably, the anonymous July 30th Letter is vulgar and offensive. But it was not addressed to the Debtor; it was addressed to the Debtor's husband. How is that a demand for payment from the Debtor? The July 30th Letter contained no reference to the J&V debt or a request for payment. Thus, the evidentiary nexus for inferring that it was an indirect debt collection effort directed against the Debtor is even more attenuated than the Employer Email.

11

Furthermore, again, there is no way to ascertain who sent the July 30th Letter. The Debtor was not able to offer any evidence (other than requested inferences similar to those described above with respect to the Employer Email) to support her assumption that the July 30th Letter came from J&V or its agents.[10]

**4.**

Finally, the Debtor points to the October 27th Letter as evidence of J&V's violation of the automatic stay. Like the Employer Email, this letter is an anonymous communication that refers to Mr. Malloy's professional suspension and makes no demand for payment on the nondischargeable J&V debt. Of course, the October 27th Letter differs from the Employer Email because it was sent to the Debtor and Mr. Malloy directly, rather than to the Debtor's employer.

However, the October 27th Letter suffers from the same inadequacy as to its probativeness as the Employer Email. Accepting arguendo, that reminding the Debtor and Mr. Malloy of his suspension from the practice of law would somehow pressure the Debtor into repaying her debt to J&V (an even less likely inference compared to the communication sent to the Debtor's employer), the evidence does not establish that it is more likely than not that J&V was responsible for the October 27th Letter.

---

[10] The post hoc ergo propter hoc argument the Debtor makes with respect to the July 30th Letter is that it was sent "at a time that [J&V] was involved with me in the main bankruptcy case, multiple bankruptcy appeals, and state court actions." (Debtor's Post-Trial Br. at 5). This is even less concrete a basis for drawing the requested inference than the unconvincing state court "service of subpoena" argument the Debtor made with respect to the Employer Email.

The Debtor again seeks to link the October 27th Letter to J&V because the letter was mailed on the same day that Mr. Malloy served a Pennsylvania state court subpoena on Paul Toner. (Debtor's Post-Trial Br. at 7). Again, this is an insufficient basis from which to draw the inference the Debtor seeks. See Part IV.B.2., supra.

The Debtor has one more arrow in her quiver. She asserts that the outside of the envelope was written by Amanda McIllmurray, a former employee of J&V's law firm. Presumably, the Debtor would have me infer that Ms. McIllmurray sent the letter at the behest of J&V or its counsel.

To support this contention, the Debtor offered the testimony of a handwriting expert who compared samples of Ms. McIllmurray's signature to the handwriting on the October 27th Letter. The expert opined that the handwriting on the envelope was Ms. McIllmurray's. (See also Ex. P-15).

In response, Ms. McIllmurray testified on behalf of J&V that she was not even employed by the law firm representing J&V on October 27, 2016.[11] (See N.T. at 102). She further testified that she did not send the letter. (See N.T. at 100).

As factfinder, I resolve the conflicting testimony in favor of J&V. I found Ms. McIllmurray to be a credible witness. By comparison, the expert's conclusions were based on a

---

[11] Ms. McIllmurray's testimony regarding her separation from the law firm was corroborated by Paul Toner and David Orphanides of the law firm of Orphanides and Toner. (See N.T. at 110).

13

thin ground of evidentiary support.[12] While the expert testimony was plausible, it was not based on a sufficient number of handwriting similarities between the samples to cause me to disbelieve Ms. McIllmurray's testimony.

Thus, I conclude that the Debtor did not establish that J&V was responsible for the October 27th Letter.

## V. CONCLUSION

At bottom, the Debtor has failed to meet her evidentiary burden. The Debtor's case falls short because none of the communications even remotely referred to her debt to J&V. Instead, they all involved the professional misconduct of Mr. Malloy. Further, the Debtor failed to establish the requisite connection between the three (3) communications and J&V. In other words, even if the communications were efforts to collect the nondischargeable J&V debt in violation of the automatic stay, the Debtor did not establish that J&V was responsible for the communications. The Debtor has not established that J&V committed a contempt of the automatic stay or is liable under 11 U.S.C. §362(k).

An order consistent with this Memorandum will be entered.[13]

---

[12] There also were indications in the handwriting samples that conflicted with the expert witness' conclusion. (See N.T. at 91).

[13] In its answer to the Debtor's Complaint, J&V requested an award of reasonable attorneys fees and costs under 11 U.S.C. §523(d). Section 523(d) is a fee-shifting provision that provides for an

(continued...)

**Date: August 24, 2017**

_____
**ERIC L. FRANK
CHIEF U.S. BANKRUPTCY JUDGE**

cc:    Deborah R. Malloy
        4205 Upland Drive
        Boothwyn, PA 19061

---

[13](...continued)
award of reasonable attorneys fees and costs to a debtor if a proceeding brought by a creditor requesting a determination of dischargeability is found to have been not "substantially justified." There is no basis for a defendant or respondent to invoke §523(d) based on a successful defense of a debtor's claim that the defendatn or respondent violated the automatic stay. J&V's request will be denied.